**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARYANN LOUGHRY, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PETCO ANIMAL SUPPLIES STORES INC.,<br><br>　　　　Defendant. | Case No. 2:22-cv-04706-KBH<br>Judge Kelley Brisbon Hodge |

**MEMORANDUM IN SUPPORT OF DEFENDANT PETCO ANIMAL SUPPLIES STORES, INC.'S MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS THE AMENDED COMPLAINT**

## I.    INTRODUCTION

The allegations Plaintiff added to her Amended Complaint (D.I. 11) compel arbitration of her claims. Plaintiff's Amended Complaint now alleges that Petco also unlawfully wiretapped her when she entered personal information during the checkout process while making purchases on Petco's website. *See* Am. Compl. ¶¶ 19, 21, 29-30 (D.I. 11).

Plaintiff's new allegation is fatal because it proves that she affirmatively assented to a contract that requires her to arbitrate any claims she may have against Petco relating to its website. This Court should follow those across the country that have enforced similar arbitration agreements under the FAA.

Plaintiff's Amended Complaint also does nothing to separate her case from the litany of meritless, cookie-cutter class actions seeking to haul out-of-state companies into forums by contorting decades-old wiretap statutes, like WESCA, that were never intended to reach a company's use of computer software to monitor routine browsing activities on its own website. To

start, the Amended Complaint still fails to establish that Petco expressly targeted Pennsylvania—as opposed to any other state—when it implemented session replay software on its website.

What's more, Plaintiff fails, yet again, to plead specific, plausible facts showing Petco used a "device" to intercept the "contents" of an "electronic communication" on its website in violation of WESCA. 18 Pa. Cons. Stat. §§ 5702, 5725. Plaintiff's claim that Petco tracked her browsing activity on its website remains no different than alleging that Petco used a video camera to record her shopping in a brick-and-mortar store—which is something that courts widely agree is not an unlawful wiretap. *See, e.g.*, *Allen v. Brown*, 320 F. Supp. 3d 16, 38 (D.D.C. 2018) ("*[E]very* federal appeals or district court to have considered the question has concluded silent video surveillance is not covered by the [analogous] federal wiretapping statute.").

Finally, Plaintiff's new allegation further proves that she consented to any alleged recording of her activity on Petco's website, which requires dismissal of her WESCA claim. By allegedly making purchases on the website, Plaintiff not only affirmatively agreed to arbitrate her claims, but she also assented to Petco's Privacy Policy. That Privacy Policy expressly discloses Petco's use of "session replay technology" on its site.

At bottom, Plaintiff's Amended Complaint remains so devoid of specific allegations that one could swap Petco for any national company without missing a beat—a practice plaintiffs have been employing across the nation, with growing frustration from courts. *See, e.g.*, *Licea v. Caraway Home, Inc.*, 2023 WL 1999496, at *6 (C.D. Cal. Feb. 9, 2023) (dismissing "cookie-cutter" wiretap claim; "[t]hese lawsuits bear strong echoes of serial Americans with Disabilities Act (ADA) litigation . . . [with complaints] written at such a high level of generality that [they] could apply word-for-word to the dozens of other businesses" being sued for the same thing).

As explained in more detail below, the Court should grant Petco's motion to compel

arbitration—or else dismiss for lack of personal jurisdiction or for failure to state a claim.

## II.   RELEVANT FACTS

Petco is a leading retailer of pet products and services dedicated to the health and wellness of pets and their owners. It is a California company with its principal place of business in California. Am. Compl. ¶ 10 (D.I. 11). Petco owns and operates www.petco.com, where visitors can browse various pet products and services. *Id*. ¶ 17.

Plaintiff is a Pennsylvania citizen who claims that "[o]ver the past year [she] made a number of visits and purchases on [Petco's] website." *Id*. ¶¶ 9, 18. She alleges that, during her visits to the website, Petco used "session replay software" to monitor her "mouse movements, key strokes, [] searches" and "what [she] has been viewing" on the website without her consent. *Id*. ¶¶ 22-23, 51. Plaintiff also claims Petco collected her "personal and private information" entered during checkout for her purchases, "like her address and credit card information." *Id.* ¶ 30.

During the relevant time period,[1] customers were required to affirmatively agree to Petco's Terms of Use and Privacy Policy when making purchases from Petco's website. *See* Ex. 1, Declaration of Julia Smith ("Smith Decl."), ¶¶ 3, 4. Specifically, customers were required to click a "PLACE ORDER" button at checkout. *Id*. ¶ 3. Directly above the "PLACE ORDER" button was the following statement: "[b]y clicking 'Place Order', you agree to Petco's Terms of Use and Privacy Policy." *Id*. ¶ 4. Petco's Terms of Use and Privacy Policy were hyperlinked, allowing a customer to simply click to open the respective documents. *Id*.

The Terms of Use and Privacy Policy that Plaintiff must have consented to contain both an

---

[1] The relevant time period here is March 27, 2022 to November 23, 2022 based on Plaintiff's initial complaint, filed November 23, 2022, and Amended Complaint, filed March 27, 2023, which *both* allege that this suit relates to Plaintiff's "visits and purchases on Defendant's website" made "[o]ver the past year." Orig. Compl. ¶18 (D.I. 1); Am. Compl. ¶ 18 (D.I. 11). The overlapping period between these two 1-year timeframes is March 27, 2022, to November 23, 2022.

arbitration cause and an explanation that Petco uses session replay software on its website.

Section 20 of the Terms of Use states that "[Plaintiff] and Petco agree that **_any and all_**

**_controversies, disputes, demands, counts, claims, or causes of action_** between" them "**_shall be_**

**_resolved through binding and confidential arbitration_**[.]" *See* Ex. 2, Declaration of Patrick Franz

("Franz Decl."), Ex. A § 20 (emphasis added). Such "[a]rbitration shall be subject to the Federal

Arbitration Act and federal arbitration law, and shall be conducted by . . . JAMS[.]" *Id.* Moreover,

the Privacy Policy explains that Petco uses session replay software:

> [Petco's] Sites use third-party tools known as "session replay" technology, which
> allow [Petco] to understand how users interact with [its] Sites. These tools recreate
> a "replay" of a user's online experience, including clickstream and other
> interactions with [Petco's] content, which [Petco] use[s] to debug [its] Sites,
> perform analyses, and improve [its] operations.

*Id.* Ex. B § 5.

Despite agreeing to these provisions, Plaintiff sues Petco in this Court under WESCA.[2]

## III.   LEGAL STANDARDS

The FAA provides that "[a] written provision in any . . . contract . . . to settle by arbitration

a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable,

and enforceable." 9 U.S.C. § 2. And "[i]f any suit . . . be brought in any of the courts of the United

States upon any issue referable to arbitration under an agreement . . .  the court in which such suit

is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to

arbitration under such an agreement, shall . . .  stay the trial of the action until such arbitration has

---

[2] Through the Terms of Use, Plaintiff also agreed that "[SHE] AND PETCO ARE EACH
WAIVING THE RIGHT TO A TRIAL BY JURY AND TO PARTICIPATE IN A CLASS
ACTION TO THE MAXIMUM EXTENT PERMITTED BY LAW." Franz Decl., Ex. A § 20.
Although not the subject of this motion, Plaintiff's class-action waiver is enforceable. *See, e.g.*,
*Coulter v. Experian Info. Sols., Inc.*, 2021 WL 735726, at *6 (E.D. Pa. Feb. 25, 2021) (plaintiff
waived rights to bring claims against defendant as class representative because "[p]laintiff's assent
to the Terms of Use Agreement include[d] assent to the class action waiver.").

been had [.]" *Id.* § 3. Thus, pursuant to the FAA, courts must enforce a valid arbitration agreement by compelling a litigant to arbitrate claims that fall within the agreement's ambit.

Under Rule 12(b)(2), Plaintiff bears the burden "of showing that personal jurisdiction exists." *Wolstenholme v. Bartels*, 511 F. App'x 215, 218 (3d Cir. 2013). To do so, she must "establish[ ] with reasonable particularity sufficient contacts between the defendant[ ] and . . . the forum state[.]" *Asanov v. Gholson, Hicks & Nichols, P.A.*, 209 F. App'x 139, 141 (3d Cir. 2006). Reliance on "bare pleadings alone" will not suffice. *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 58-59 (3d Cir. 1986).

Under Rule 12(b)(6), only complaints that "state[ ] a plausible claim for relief survive[ ] a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And while courts accept material allegations as true and resolve factual inferences in plaintiffs' favor, they should reject bald assertions or inferences, as well as "threadbare" legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Ultimately, "where [] well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

## IV.    LAW AND ARGUMENT

### A.    The Court should compel arbitration because Plaintiff agreed to arbitrate all website-related claims against Petco.

The arbitration provision Plaintiff agreed to when she allegedly purchased products on Petco's website requires the Court to compel arbitration pursuant to the FAA. 9 U.S.C. §§ 2-3; *see, e.g.*, *Hoffman v. Compassus*, 2019 WL 1791413, at *4 (E.D. Pa. Apr. 23, 2019) ("[I]f the parties entered into a valid agreement to arbitrate, and the specific dispute falls within the scope of that agreement, the FAA mandates judicial enforcement of that agreement."). Courts apply "ordinary state-law principles governing contract formation" when determining whether a valid

arbitration agreement exists. *MZM Constr. Co., Inc. v. NJ Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020). Under Pennsylvania law, a court must consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Benedict v. Guess, Inc.*, 2021 WL 37619, *6 (E.D. Pa. Jan. 5, 2021). "If the response is affirmative on both counts, the FAA requires the court to enforce the arbitration agreement in accordance with its terms." *Lloyd v. Retail Equation, Inc.*, 2022 WL 18024204, at *4 (D.N.J. Dec. 29, 2022). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Hoffman*, 2019 WL 1791413, at *5.

Because the parties agreed to arbitrate their website-related disputes and Plaintiff's claims are directly related to her use of the website, this Court should compel arbitration.

> 1. *The Court can, and should, evaluate the parties' arbitration agreement at this stage.*

At the Rule 12 stage, courts generally consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). But it is well established that "an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them").

Furthermore, upon a motion to compel arbitration, the Third Circuit directs that "when it is apparent, based on 'the face of a complaint, and the documents relied upon in the complaint,' that [] a party's claims 'are subject to an enforceable arbitration clause, a motion to compel

arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). This is true even "[w]here," as here, "plaintiff's complaint 'makes no mention of the [arbitration agreement][.]'" *Lloyd*, 2022 WL 18024204, at *7, n.3 (collecting cases). That is because "[p]recluding review of a complaint under the Rule 12(b)(6) standard simply because a plaintiff has avoided reference to an existing arbitration agreement would frustrate the purpose of the FAA [which] facilitate[s] expedited resolution of disputes where the parties to a contract have opted for arbitration." *Benedict*, 2021 WL 37619, *4; *see also Hewitt v. Rose Grp.*, 2016 WL 2893350, at *2, n.1 (E.D. Pa. Mar. 21, 2016) ("It would frustrate the purposes of the [FAA] if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints.").

Consistent with the FAA's purpose, courts within this Circuit have regularly considered arbitration agreements attached to motions to dismiss or to compel arbitration under the 12(b)(6) standard, despite the absence of any refence to such agreements in the complaints. *See e.g.*, *Lloyd*, 2022 WL 18024204, at *7-8 (motion to compel arbitration governed by Rule 12(b)(6) where defendant cited declaration attaching website terms containing arbitration agreement and screenshot of checkout process, even though complaint did not mention); *Mucciariello v. Viator, Inc.*, 2019 U.S. Dist. LEXIS 166696, at *3, n.1 (D.N.J. Sept. 27, 2019) (considering defendant's declarations and exhibits, including website terms, on motion to dismiss or transfer venue, "because they directly relate[d] to Viator's website, which is referenced in, and, indeed, integral to, Plaintiff's Complaint"); *Benedict*, 2021 WL 37619, at *4 (even though plaintiff's complaint made no mention of arbitration agreement, court considered agreement and applied the 12(b)(6) standard to defendant's motion to dismiss complaint and to compel arbitration.).The Court here

should likewise evaluate at this juncture whether there is a valid arbitration agreement that covers Plaintiff's claims despite her failure (or strategic decision) to not reference such agreement in her Amended Complaint.

Or at the very least, the Court should consider Petco's Terms of Use and Privacy Policy as "integral" to Plaintiff's claims. The crux of Plaintiff's case is that Petco illegally wiretapped her while she browsed its website through session replay software. Am. Compl. ¶¶ 14-15, 21-23, 29-30 (D.I. 11). Petco moved to dismiss Plaintiff's original complaint because, *inter alia*, she did not allege that Petco intercepted the substance of communications. Mot. to Dismiss at 11-15 (D.I. 10). In response, Plaintiff amended her complaint with only one substantive change: she now alleges that she "made a number of . . . purchases on [Petco's] website" and that Petco also collected her "personal and private information" that she entered during checkout, "like her address and credit card information." Am. Compl. ¶¶ 18-19, 21, 29 (D.I. 11); *contra* Orig. Compl. ¶¶ 18-19, 21 (D.I. 1). The checkout webpage from which Plaintiff alleges Petco collected her personal information is therefore "integral to" her complaint, as are the documents Plaintiff was required to accept multiple times on that checkout page when making her alleged purchases. ¶¶ 18-19, 21, 29 (D.I. 11); Smith Decl., Ex. A (exemplar webpage).

Accordingly, the Court has ample ground and authority to evaluate and enforce the parties' arbitration agreement at this stage.

> 2. *The Terms of Use Plaintiff agreed to includes a valid arbitration agreement.*

By "ma[king] a number of . . . purchases on [Petco's] website," Am. Compl. ¶¶ 18-19, 21 (D.I. 11), Plaintiff repeatedly agreed to Petco's Terms of Use. Those Terms of Use require her to bring "any and all" claims against Petco via arbitration. Franz Decl., Ex. A § 20.

When determining whether a valid arbitration agreement exists, "federal law presumptively favors the enforcement of arbitration agreements." *Hoffman,* 2019 WL 1791413, at *7. Under

Pennsylvania law, online agreements—like the one at issue here—are enforceable where the plaintiff had reasonable notice of and assented to the agreement. *Dobbs v. Health IQ Ins. Servs., Inc.*, 2022 WL 2974713, at *3-4 (E.D. Pa. Jul. 27, 2022).

Courts evaluate whether a plaintiff had reasonable notice of the terms by considering "whether the specifics surrounding [the] agreement revealed either that the user knew or should have known about the existence of the terms and conditions[.]" *Lloyd*, 2022 WL 18024204, at *10, n.4. "Hyperlinked terms . . . amount to an enforceable agreement when 'reasonable notice' is provided and a button is designated to manifest assent, near a statement informing the user that, by clicking, he or she is agreeing to be bound by the hyperlinked terms." *Mucciariello*, 2019 U.S. Dist. LEXIS 166696, at *14, *17. "As a result, 'an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence.'" *HealthPlanCRM, LLC v. AvMed, Inc*., 458 F. Supp. 3d 308, 332 (W.D. Pa. 2020); *see also Noble v. Samsung Elecs. Am., Inc*., 682 F. App'x 113, 116 (3d Cir. 2017) ("Once there is reasonable notice, a party is bound by those terms, even if he failed to read them.").

Courts within this Circuit routinely find that consumers had reasonable notice of and assented to a website's terms where, as here, the site informs consumers that clicking a button is an agreement to hyperlinked terms. *See e.g.*, *Lloyd*, 2022 WL 18024204, *10-11 (plaintiff had reasonable notice of terms where they were "hyperlink[ed] in clear font in a relatively uncluttered location of the screen" and "directly above the 'PLACE ORDER' icon that [plaintiff] was required to click to make her purchase," and "page also contained a textual notification in the same area indicating that, '[b]y placing your order, you agree to the TJ MAXX terms of use"); *Dobbs*, 2022 WL 2974713, at *4 (plaintiff had reasonable notice of and assented to terms, including agreement to arbitrate, where terms were hyperlinked, "the letters were purposely and conspicuously set off

from the remaining text in a blue, underlined font", on defendant's web page there was the following statement "[b]y clicking 'SUBMIT', you agree to our Privacy Policy and Terms of Use", and plaintiff clicked "SUBMIT" button.); *Mucciariello*, 2019 U.S. Dist. LEXIS 166696, at \*16-19 (forum-selection clause binding because plaintiff had reasonable notice of terms that were hyperlinked underneath "Book Now" button on website; and, below button, webpage had a message stating, "[b]y clicking Book Now and making a reservation, I acknowledge that I have read and agreed to be bound by" relevant terms); *HealthPlanCRM, LLC*, 458 F.Supp.3d at 331-32 (compelling arbitration where text below "LOG ON" button stated, "[u]se of [website] constitutes acceptances of the End User License Agreement" and terms were hyperlinked).

Plaintiff here had reasonable notice of the Terms of Use containing the arbitration clause under this case law. Plaintiff alleges she "made a number of . . . purchases" on Petco's website. Am. Compl. ¶¶ 18-19, 21, 29 (D.I. 11). To have done so during the relevant time frame, Plaintiff was required to click a "PLACE ORDER" button on the checkout page. Smith Decl. ¶ 3, Ex. A. Directly above that button, the website informed Plaintiff that, "[b]y clicking 'Place Order', you agree to Petco's Terms of Use and Privacy Policy." *Id*. ¶ 4, Ex. A. That same sentence included hyperlinks to Petco's Terms of Use and Privacy Policy—in bold, blue font against a white background—making them reasonably conspicuous. *Id*.

Simply put, if Plaintiff made purchases on Petco's website in the year preceding her initiation of this Action—as she alleges she did—she must have affirmatively assented to Petco's Terms of Use, which contain a valid arbitration clause that must be enforced here.

3.      *Plaintiff's claim falls within the scope of the arbitration agreement.*

"'[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Hoffman,* 2019

WL 1791413, at *5. This presumption "is particularly strong when the arbitration clause in question is broad." *Miron v. BDO Siedman, LLP*, 342 F. Supp. 2d 324, 328 (E.D. Pa. 2004).

The parties' arbitration agreement broadly states that "any and all . . . disputes, . . . , claims, or causes of action between [Plaintiff] and [Petco], . . . shall be resolved through binding and confidential arbitration[.]" Franz Decl., Ex. A § 20. The agreement expressly adds that the term "'[d]ispute' shall be interpreted broadly." *Id*.

Given this broad language—and the FAA's presumption to resolve any doubts in favor of arbitration—it is clear that Plaintiff's allegation that Petco's use of session replay technology violated WESCA falls squarely within the scope of the provision. *See, e.g.*, *Lloyd*, 2022 WL 18024204, at *6-14 (granting motion to compel arbitration where plaintiff accepted defendant's website's terms of use, which contained an arbitration provision.). Accordingly, this Court should compel arbitration and stay the action pending the arbitration award.

> 4.    *Because there is an enforceable arbitration agreement, this Court must compel arbitration and stay the case.*

The above facts and law establish that Plaintiff affirmatively, and repeatedly, assented to a valid arbitration agreement that encompasses the WESCA claim she asserts in the Amended Complaint. Under the FAA, the Court must compel arbitration of Plaintiff's claim. 9 U.S.C. § 3; *see e.g.*, *Org. Strategies, Inc. v. Feldman Law Firm LLP*, 604 Fed. Appx. 116, 118 (3d. 2015) (affirming enforcement of arbitration agreement); *Voegele Mech., Inc. v. Loc. Union No. 690*, 403 F. Supp. 3d 447, 453, 460 (E.D. Pa. 2019) (enforcing arbitration agreement; collecting cases).

**B.    This Court does not have personal jurisdiction over Petco.**

Alternatively, the Court should dismiss the Amended Complaint for lack of personal jurisdiction. "A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods.*

*Co.*, 75 F.3d 147, 150 (3d Cir. 1996). The Court looks to federal law to analyze personal jurisdiction because the reach of Pennsylvania's long-arm statute "is coextensive with the limits placed on the states by the federal Constitution." *Id*. Plaintiff must thus allege that Petco "made constitutionally sufficient 'minimum contacts' with" Pennsylvania. *Id*. She has not done so.

Sufficient minimum contacts come in two forms. First, "[a] court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The second form, "[s]pecific jurisdiction," "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. (cleaned up). "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id*.

Plaintiff does not allege either form of minimum contacts with Pennsylvania. To begin, she concedes that Petco is a California corporation with its principal place of business in California. Am. Compl. ¶ 10 (D.I. 11). As such, Petco is not subject to general personal jurisdiction in Pennsylvania. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("paradigm" basis for general jurisdiction over a company is its state of incorporation and principal place of business); *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) ("it is incredibly difficult to establish general jurisdiction over a corporation in a forum other than the place of incorporation or principal place of business") (cleaned up).

Next, while Plaintiff incants the language of specific jurisdiction, her complaint does not show that it actually exists. *See* Am. Compl. ¶¶ 2-4 (D.I. 11). "[S]pecific jurisdiction allows the

court to hear claims that arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being hailed [*sic*] into court in that forum." *Chant Eng'g Co. Inc. v. Cumberland Sales Co.*, 2021 WL 848062, at *3 (E.D. Pa. Mar. 5, 2021). Courts analyze this question with a three-part test: (1) whether the defendant "purposefully directed his activities at the forum;" (2) whether the "plaintiff's claim [] arise[s] out of or relate[s] to" one or more those activities; and, if the first two are met, (3) whether "additional factors [] ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice." *Id.* (cleaned up).

Plaintiff's rote allegations do not meet this test. She makes three principal allegations: (1) Petco markets and sells goods in Pennsylvania; (2) Petco has a website available to Pennsylvania customers; and (3) Petco's alleged wiretapping occurred in Pennsylvania. Am. Compl. ¶¶ 2-4 (D.I. 11). None of these clears the constitutional hurdle of specific jurisdiction.

 1.  *Plaintiff's claims are not based on her purchase of goods in Pennsylvania.*

That Petco markets and sells goods in Pennsylvania does not mean a plaintiff can automatically sue Petco here. *See Shuker v. Smith & Nephew PLC*, 885 F.3d 760, 780 (3d. Cir. 2018) ("efforts to sell products in the United States generally [and] not in Pennsylvania specifically" do not show "deliberate targeting" of the forum) (cleaned up). Moreover, Plaintiff's assertions that Petco has entered into online "contracts for the sale of goods with residents of Pennsylvania," including Plaintiff herself, and has "ultimately shipp[ed] products to Pennsylvania," Am. Compl. ¶¶ 3, 19, are irrelevant to the jurisdictional analysis here. Plaintiff's claims are based *solely* on Petco's use of session replay software on its website—*not* a product she (or anyone else) purchased and received from Petco in Pennsylvania. *See id.* ¶¶ 49-51.

This distinction is critical. Specific jurisdiction requires forum contacts that "arise out of or relate to" the controversy at issue. In other words, specific jurisdiction is limited to cases that "arise[ ] out of" a defendant's specific in-state contacts that relate to the plaintiff's claims. *Daimler*,

571 U.S. at 127; *see Goodyear*, 564 U.S. at 919 (specific jurisdiction confined to issues connected to "the very controversy" that purportedly establishes jurisdiction); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1776 (2017) ("What is needed is a connection between the forum and the specific claims at issue."); *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009) (affirming lack of specific jurisdiction because "appellants do not allege that their claims 'arise out of or relate to' [] contacts within Pennsylvania").

So, regardless of whether Petco "purposefully direct[s]" the sale of goods to Pennsylvania generally or has done so to Plaintiff specifically, Plaintiff's claim must itself stem from such a sale to support specific jurisdiction over Petco in Pennsylvania. But it does not.

Plaintiff's sole claim is that Petco unlawfully wiretapped her while she browsed its website by monitoring her "mouse movements, key strokes, and searches" and "what [she] ha[d] been viewing." Am. Compl. ¶¶ 22-23. Because Plaintiff's wiretapping allegations are about browsing Petco's website—not buying something from Petco—they do not "arise out of" the commercial contacts she alleges Petco has with Pennsylvania. Therefore, specific jurisdiction has not been established. *See, e.g.*, *Massie v. General Motors Co*., 2021 WL 2142728, at \*4 (E.D. Cal. May 25, 2021) (no personal jurisdiction over General Motors despite allegation that it wiretapped website visitors through session replay software); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in the other party's home forum"); *Rittinger v. Keystone Maint. Servs. Corp.*, 2018 WL 3455856, at \*7-8 (M.D. Pa. Jul. 18, 2018) ("relatedness" requirement not satisfied where plaintiff alleged certain parts were shipped into Pennsylvania but "none of [those] parts [were] related to any claims in th[e] case").

   2.   *Petco did not direct its activity at Pennsylvania by operating a website.*

Plaintiff's second alleged basis for specific jurisdiction—that Petco "makes its active

commercial website available to residents of Pennsylvania," Am. Compl. ¶ 2 (D.I. 11)—fares no better. The law across the country is clear: a company is not subject to specific jurisdiction everywhere simply because it operates a website that can be used from anywhere. And Plaintiff here does not allege—because she cannot—that Petco purposely aimed its website or use of session replay technology at Pennsylvania specifically, as opposed to everywhere.

That a defendant "could knowingly interact, or engage . . . with residents of Pennsylvania" through its website is insufficient because the mere "capab[ility] of doing business with Pennsylvania customers" does not mean the defendant "intentionally did so." *Murphy v. Humboldt Clothing Co.*, 2021 WL 307541, at *5 (W.D. Pa. Jan. 29, 2021); *see also M.H. & J.H., ex rel. C.H. v. Omegle.com LLC*, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021) (no "indicia of purposeful direction" where website is "generally accessible" because "basic awareness that residents of a specific forum use a website is insufficient; the facts must demonstrate that the website targeted those users"). A plaintiff's "attempts to establish the requisite minimum contacts through his own efforts to utilize Defendant's website" are "also insufficient . . . [because] personal jurisdiction must arise from the defendant's own purposeful targeting of the forum state, not the unilateral activities of others." *Murphy*, 2021 WL 307541, at *6.

*Massie v. General Motors Co.* is directly on point. 2021 WL 2142728. There, the court found the plaintiff's allegation that "GM knew and foresaw that the wiretapping would impact Californians" did not suffice for personal jurisdiction. *Id*. at *5. "Without facts showing GM specifically targeted California, the operation of an internationally accessible website is insufficient to serve as a ground for personal jurisdiction." *Id*. at *4.

As the *Massie* court explained, if Plaintiff's allegations were sufficient, "every online advertiser worldwide [could] be haled" into every state. 2021 WL 2142728, at *6. But this Court's

jurisdiction is not limitless, and courts widely agree that "[p]ersonal jurisdiction cannot reasonably stretch" to the length that Plaintiff alleges here. *Smith v. Facebook*, 262 F. Supp. 3d 943, 952 (N.D. Cal. 2017) ("Under Plaintiffs' theory, every website operator that embeds one of these tools could be haled into court where the third-party company resides."); *see Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 211-12 (3d Cir. 2013) ("[T]he mere operation of a commercially available web site should not subject the operator to jurisdiction anywhere in the world."); *Motus, LLC CarData Consultants*, *Inc*., 23 F.4th 115, 125 (1st Cir. 2022) (mere operation of websites cannot establish specific jurisdiction because "'the universality of websites in the modern world would overwhelm constitutional limitations' and render website operators amenable to suit anywhere within the vast reach of the internet"); *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022) (dismissing session replay wiretap claims for lack of personal jurisdiction where "[t]he alleged harm—the recording of Plaintiff's visit to the . . . website and the collection of his personal data—would have occurred no matter the state Plaintiff was in").

In sum, Plaintiff cannot establish personal jurisdiction by simply claiming Petco operated a widely accessible website that Pennsylvanians (along with the citizens of every other state) might use. Am. Compl. ¶¶ 2-4. Noticeably absent from the Amended Complaint are allegations that Petco's servers are located in Pennsylvania; that its decision to implement session replay software was made in Pennsylvania as opposed to its California headquarters; that its IT personnel responsible for maintaining the website are located in Pennsylvania; or even that the session replay software itself originated from Pennsylvania. The lack of any such allegations is fatal.

### 3. *Plaintiff cannot manufacture personal jurisdiction through the location of the alleged wiretap.*

Finally, Plaintiff's claim that "[Petco's] tortious conduct against Plaintiff occurred in substantial part within this District," Am. Compl. ¶ 4, does not create personal jurisdiction. *See*

*Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Miller v. Native Link Constr., LLC*, 2017 WL 3536175, at \*23 (W.D. Pa. Aug. 17, 2017) (mere "knowledge of a plaintiff's existence in the forum State or knowledge that [defendant's] conduct may cause a plaintiff to experience harm in the forum State are insufficient justifications for establishing specific jurisdiction"). Not only is this allegation immaterial to the jurisdictional analysis, but Plaintiff also offers no factual support for it. The Court need not "credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 688.

      **C.**     **Plaintiff fails to state a viable claim for relief because Petco's alleged actions do not violate WESCA's plain language.**

Even if Plaintiff and her claim were properly before this Court (they are not), she fails to state a claim for a violation of WESCA. The Court therefore should dismiss the Amended Complaint pursuant to Rule 12(b)(6).

WESCA prohibits the intentional interception, use, or disclosure of a "wire, electronic, or oral communication" unless one of several exceptions to the statute applies. *See* 18 Pa. Cons. Stat. §§ 5703, 5704. Plaintiff alleges that her claim "aris[es] from [Petco's] unlawful wiretapping of [her] communications[.]" Am. Compl. ¶ 1. More specifically, she asserts "[Petco] has acquired the contents of [her] electronic communications using a device." *Id.* ¶ 49. Thus, Plaintiff's claim turns on whether "[her] activities on [Petco's] site" were "electronic communications," the "contents" of which were unlawfully "intercepted" by a "device" within the meaning and scope of the statute. 18 Pa. Cons. Stat. §§ 5702, 5725.

As explained below, Plaintiff's allegations do not meet these requirements.

       1.       *Petco did not intercept the "contents" of communications.*

Plaintiff opens her Amended Complaint by proclaiming that "[t]his is an action for damages arising from [Petco's] unlawful wiretapping of [her] communications without consent or notice." Am. Compl. ¶ 1. But what she actually alleges in the body of her Amended Complaint is that Petco tracked her browsing activities while she was on its website. *See id*. ¶¶ 19-23. The recording of such browsing activities is not an unlawful wiretap under WESCA, much like Petco's silent videotaping someone browsing in a brick-and-mortar would not be. *See Allen*, 320 F. Supp. 3d at 38 ("*[E]very* federal appeals or district court to have considered the question has concluded that silent video surveillance is not covered by the federal wiretapping statute."); *Minotty v. Baudo*, 42 So.3d 824, 832 (Fla. Dist. Ct. App. 2010) ("[S]ilent surveillance videos of . . . physical movements had no content because they did not convey the substance of the particular communication.").

To "intercept," Petco must "acquire the contents of" Plaintiff's communications. 18 Pa. Cons. Stat. § 5702. "Contents," in turn, means "information concerning the ***substance, purport, or meaning*** of [a] communication." *Id*. (emphasis added). WESCA's narrow definition of "contents" shows that the statute protects the substantive aspects of information exchanges—like the words used during a phone call. But "contents" does not include tangential pieces of metadata regarding Plaintiff's browsing on a website that the Pennsylvania legislature could not have envisioned when enacting WESCA decades ago.[3] *Cf. Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021) ("Congress did not intend for the Federal Wiretap Act to extend to the use of commonplace analytics software to improve a website browsers' experience[,] and the [Florida Security of Communications Act], being modeled after the Federal Wiretap Act, likewise does not

---

[3] The Pennsylvania legislature has updated WESCA since its original enactment, but it has not amended the definition of "contents" to encompass the type of browsing activity at issue here.

extend to the use of commonplace analytics software to improve a website browsers' experience."); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *3 (E.D. Pa. Dec. 13, 2007) ("[WESCA] tracks the language set forth in the Federal Act, and has been interpreted identically.").

Here, Plaintiff alleges "[Petco] has been intercepting, capturing, and observing its customers' individual ***online activities***," which "allows [Petco] to record and playback consumer's individual ***browsing sessions***" and "to view the ***interactions of consumers*** in real time." Am. Compl. ¶ 14 (emphasis added). She claims "[Petco] has stored data as minute as mouse movements around the screen, the length of time spent hovering, the key words searched, and separate products or services that were of interest to its customers." *Id*. at ¶ 15. In her experience, Plaintiff specifically alleges Petco "monitor[ed] [her] mouse movements, key strokes, and searches," and "monitor[ed] what [she] has been viewing," which included her "personal and private information" like "her address and credit card information." *Id*. at ¶¶ 22-23, 29.

These facts do not sufficiently allege any "contents" under WESCA because the way in which Plaintiff interacted with Petco's website does not concern the "substance, purport, or meaning" of a protected communication. Rather, her activity is simply how *anyone* browses or uses a website on the internet.

Numerous courts have dismissed wiretapping claims relating to session replay software on this basis. In *Jacome*, for example, the court rejected the plaintiff's arguments that "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff" were "contents" of a communication because "this is precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any

message." 2021 WL 3087860, at *4; *accord Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *2 (S.D. Fla. Aug. 23, 2021) (same conclusion in case involving session replay software), *report and recommendation adopted*, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021).

Likewise, in *Yoon v. Lululemon USA, Inc.*, the court dismissed a claim under California's Invasion of Privacy Act where the plaintiff alleged session replay software "recorded her 'keystrokes, mouse clicks, [and] pages viewed'" among other information. 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021). Because "[n]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do," the court found that the plaintiff "ha[d] not alleged that [the defendant] intercepted 'content.'" *Id*. at 1083.

Furthermore, as the Ninth Circuit has explained, "contents" does not include "record information" such as name, address, or identity of a subscriber or customer that is "generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (affirming dismissal of federal wiretap claims because users' Facebook ID and location of webpage they were viewing on internet are not "contents" of any communications). Similarly, in *S.D. v. Hytto Ltd.*, the court concluded that information concerning an application's time and date usage was not "content" within the meaning of the analogous federal wiretap statute. 2019 WL 8333519, at *6 (N.D. Cal. May 15, 2019). Because "protected 'content' under the [federal wiretap] Act is a person's 'intended message to another' and the 'essential part' of a communication[,]" the *Hytto* court held that, "to the extent [the plaintiff's] claim depends on" unprotected record information that defendant collected, "the claim fails." *Id*. at *6-7. And in *In re Carrier IQ, Inc.*, the court dismissed plaintiff's wiretap claims because username and password information "do[es] not reveal the substance, purport, or meaning of any communication." 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015); *see id*. at 1082-1084 (surveying case law and finding that "courts have excluded

various types of information from the definition of 'content,'" including, "information about a telephone call's origination, length and time," "geographic location of a mobile device," "a user's Facebook ID," and "name, email address, Google account name, home city and state, zip code, and in some instances telephone number") (cleaned up).

As these cases show, the Court should dismiss Plaintiff's WESCA claim because she has not plausibly alleged that Petco recorded the "content" of her purported communications.

### 2. Session replay software is not a "device."

Plaintiff's WESCA claim also fails because session replay software is not a "device." *See* 18 Pa. Cons. Stat. § 5703(1). An "intercept" is an "acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other ***device***." *Id*. at § 5702 (emphasis added). "Intercept" therefore "reduces to acquiring certain communications using a device." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022). A "[d]evice," in turn, is "[a]ny device or apparatus . . . that can be used to intercept a wire, electronic, or oral communication" other than things like telephones, telegraphs, hearing aids, and call-center equipment used for training or quality control. 18 Pa. Cons. Stat. § 5702.

In her Original Complaint, Plaintiff failed to identify any relevant "device" whatsoever. Petco noted this fatal deficiency in its original motion to dismiss. *See* Mot. to Dismiss at 15 (D.I. 10-1). In a weak attempt to remedy that flaw, Plaintiff cursorily inserted the word "device" into several paragraphs of her Amended Complaint. *See* Am. Compl. ¶¶ 14, 26, 50 (D.I. 11).

Simply adding the word "device," without alleging in any detail what that device is and why it plausibly falls within the statute's definition, does nothing to remedy Plaintiff's underlying pleading deficiency. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To the extent Plaintiff implies that "electronic software such as session replay technology"

is the relevant "device," *see* Am. Compl. ¶ 50, then she is wrong. No court has extended the meaning of "device" under WESCA to include non-physical, intangible things such as "software" or "technology." This is consistent with the plain and ordinary meaning of the words "device" and "apparatus"—as defined both now and in 1978 when WESCA was enacted—that clearly refer to physical objects. A "device" is "an object or piece of equipment that has been designed to do a particular job." *Device*, OXFORD LEARNER'S DICTIONARY, available at https://www.oxfordlearnersdictionaries.com/us/definition/english/device. And an "apparatus" is "the tools or other pieces of equipment that are needed for a particular activity or task." *Apparatus*, OXFORD LEARNER'S DICTIONARY, available at https://www.oxfordlearnersdictionaries.com/us/definition/english/apparatus. These contemporary definitions are virtually identical to their 1978 predecessors. *See* THE MERRIAM-WEBSTER DICTIONARY (1978) (Ex. 3).

Plaintiff's attempt to enlarge WESCA's scope by expanding "device" beyond that term's plain meaning should therefore be rejected. *See Com. v. Hogue*, 2019 WL 3545843, at *4 (Pa. Super. Ct. Aug. 5, 2019) (using a "plain reading" of WESCA to reject interpretation of "device"); *see also Com. v. Gamby*, 283 A.3d 298, 307 n.11 (Pa. 2022) ("[W]e strive to determine [] meaning at the time the General Assembly enacted the legislation . . . [so that statutes are not] freely invest[ed] . . . with new meanings . . . [and] reliance interests in the settled meaning of a statute are protected); *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 462–63 (D. Md. 2015) ("most natural reading" of "apparatus" and "device" is something like a "piece of equipment").

Indeed, courts interpreting "device" in the wiretap context have held that computer software, and similar intangible technology, do not qualify. In *Ideal Aerosmith*, for example, the Court addressed what constitutes a "device" under WESCA and the analogous federal anti-wiretap statute, and concluded that a "drive or server on which an e-mail is received does not constitute a

device for purposes of the Wiretap Act." 2007 WL 4394447, at *4 (citing *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (concluding same); *cf. U.S. v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) (rejecting argument that software is a "device" under federal Stored Communications Act because "software is not a 'device' under its plain meaning"); *Wesley Coll. v. Pitts*, 974 F. Supp. 375, 384 (D. Del. 1997) (stating that, in enacting federal anti-wiretap statute, "Congress had in mind more surreptitious threats to privacy than simply looking over one's shoulder at a computer screen").

More recently, a court held that session replay software was not a "device" under Florida's parallel anti-wiretap statute. *See Jacome*, 2021 WL 3087860, at *5. The *Jacome* court found it persuasive that "other courts have held that software, email servers, and drives do not constitute devices under the wiretapping statutes." *Id.* (citing *Potter v. Havlicek*, 2008 WL 2556723, at *1, *8 (S.D. Ohio June 23, 2008) (dismissing wiretap claim because "device" did not include computer software that "automatically record[ed] and store[d] . . . all activity of the [computer's user]")).

This Court should follow *Jacome*, find the reasoning of *Ideal Aerosmith* and similar cases persuasive, and—consistent with the plain meaning of "device"—dismiss Plaintiff's WESCA claim for failing to sufficiently plead this requisite element.

### D. Plaintiff consented to any alleged recording on Petco's website.

Independent of her (repeated) failure to allege facts that satisfy the elements of WESCA, Plaintiff's claim should be dismissed for the additional reason that she consented to Petco's use of session replay software on its website. An interception of communications "shall not be unlawful" under WESCA where "all parties to the communication have given prior consent to such interception." 18 Pa. Cons. Stat. § 5704(4). That consent does not require "actual knowledge" but can instead "be demonstrated when the person being recorded knew or should have known[] that the conversation was being recorded." *Popa*, 52 F.4th at 132 (citing *Commonwealth v. Byrd*, 235

A.3d 311, 319 (Pa. 2020)).

As explained above, by alleging that she "has made a number of visits and purchases on [Petco's] website," Am. Compl. ¶ 18, Plaintiff necessarily consented to Petco's Privacy Policy. *See supra* Part IV(A); *see also* Smith Decl. ¶ 4 ("[B]y clicking 'Place Order', you agree to Petco's . . . Privacy Policy[.]").)

Even a cursory reading of the Privacy Policy reveals that Petco expressly disclosed to Plaintiff that it may use session replay software to track the type of browsing activities at issue here. For example, the Privacy Policy contained, among others, an entire section titled "**DIGITAL TRACKING TOOLS[]**" that expressly discloses Petco "use[s] third-party tools known as ***'session replay' technology***, which allows us to understand how users interact with our Sites. ***These tools recreate a 'replay' of a user's online experience, including clickstream and other interactions with our content,*** which we use to debug our Sites, perform analyses, and improve our operations." Franz Decl., Ex. B § 5 (emphasis added). Likewise, under the "**SUMMARY OF OUR PRIVACY PRACTICES**" table in Section 1, the policy had a "**Browsing Activity and Usage Data**" subsection that explains Petco captures "Browsing and search history, and information about your interactions with our Sites" that is collected from "You or the devices you use" and "Data analytics providers." *Id.* § 1.

Given Petco's repeated, plain-language disclosures concerning its use of digital-tracking tools and the monitoring of browsing activities—including an explicit disclosure of its use of "session replay technology"—Plaintiff consented under the "knew or should have known" standard. *See Byrd*, 235 A.3d at 319; *see also Garcia v. Enter. Holdings*, *Inc*., 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (dismissing website wiretap claim "given the express provisions of the Privacy Policy" that contradicted plaintiff's "bare allegation that he did not consent"); *Silver v.*

*Stripe, Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (granting motion to dismiss "based on plaintiffs' consent to the collection of the data").

Finally, not only did Plaintiff expressly consent to Petco's use of session replay software, she also consented to Petco's recording of "personal and private information" like the "address and credit card information" that she alleges was voluntarily submitted during checkout. Am. Compl. ¶ 29. A reasonable customer understands that a company must record her personal and financial information to complete and effectuate an online purchase. *See Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. 2001) ("Any reasonably intelligent person, savvy enough to be using the Internet [is] aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message. By the very act of sending a communication over the Internet, the party expressly consents to the recording of the message."); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private . . . [and] recognize . . . that our data has to be going somewhere."). The Court should dismiss on these grounds, too.

Given that Plaintiff consented in numerous ways to the conduct she complains of here, the Amended Complaint should be dismissed.

## V.    CONCLUSION

For the reasons set forth above, the Court should compel arbitration or alternatively dismiss this action with prejudice.

25

Dated: April 24, 2023

Respectfully submitted,

/s/ Edward J. McAndrew

Dante A. Marinucci (*pro hac vice* pending)     Edward J. McAndrew (PA Bar No. 77103)
**BAKER & HOSTETLER LLP**                        **BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000                     1735 Market Street, Ste. 330
Cleveland, OH 44114                              Philadelphia, PA 19103
Telephone: (216) 621-0200                        Telephone: (215) 564-8386
Facsimile: (216) 696-0740                        Facsimile: (215) 568-3439
dmarinucci@bakerlaw.com                          emcandrew@bakerlaw.com

Paul G. Karlsgodt (*pro hac vice* pending)
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
pkarlsgodt@bakerlaw.com

*Counsel for Petco Animal Supplies Stores, Inc.*

**CERTIFICATE OF SERVICE**

It is hereby certified that, on April 24, 2023, the foregoing was electronically filed with the Clerk of the Court using the ECF system, which will provide notice electronically to all counsel of record.

*/s/ Edward J. McAndrew*
*Counsel for Petco Animal Supplies Stores, Inc.*